IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRCIT OF PENNSYLVANIA

Francis Boyd                                         :

             Plaintiff                               :        CIVIL ACTION NO.

                                                     :              20-CV-3058

             v.                                      :

Pennsylvania Department of Corrections,

Correct Care Solutions, Secretary Wetzel,            :

John Hochberg, Christopher Oppman,                   :

 Paul Noel, Joseph Silva, John Steinhart,            :

Cirillo, Dr. Lisiak, Brenda Houser, Nurse            :

 Bushinski,Shirley Law-Smith, and Dr. Littles        :

                                                     :

             Defendants                              :

**Plaintiff Boyd's Amended Complaint**

---

## I. **Introduction**

1. Plaintiff Francis Boyd filed a civil rights complaint June 18, 2020 alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment i. e. deliberate indifference to a serious medical need. The Complaint was filed pro se pursuant to 42 U.S.C. 1983 and 28 USC 1331and 1343. The Court has supplemental jurisdiction pursuant to 28 USC 1376 (a) to adjudicate claims under Article 1, sec. 13 of the Pennsylvania Constitution.   Angus Love Esq. was appointed to the case of Dec. 28, 2020. Plaintiff Boyd seeks to amend his complaint without court approval pursuant to Federal Rule of Civil Procedure 15 (a) (1) (A) to address concerns in this Court's order of Dec. 7, 2020. Plaintiff Boyd incorporates by reference his initial complaint.

## II. **Parties**

2. Defendant Pennsylvania Department of Corrections (DOC) is an agency of the Commonwealth of Pennsylvania that operates SCI Mahanoy and

SCI Chester, among other correctional institutions. The principal office for the DOC is located in Mechanicsburg, Pennsylvania. The DOC is responsible for providing adequate medical health services to and creating policies that ensure appropriate medical treatment to Plaintiffs and those similarly situated.

3. Defendant John Wetzel is the Secretary of the DOC. He is responsible for all the oversight, operation, and administration of the Commonwealth's correctional system, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that treatment to Plaintiff. He is sued in his official and individual capacities. At all relevant times, Defendant Wetzel has acted and will continue to act under color of state law.

4. Defendant Correct Care Solutions is the current health care provider for all DOC facilities. The principal office for Correct Care Solutions is in Nashville, Tennessee, and, on information and belief, maintains an office in Pennsylvania. Correct Care Solutions began providing

health care services to the Pennsylvania DOC on September 1, 2014. At all relevant time, Correct Care Solutions has acted and will act under the color of state law.

5. On information and belief, Defendant John Hochberg is the Assistant Medical Director for Correct Care Solutions' Regional Office, and is responsible for overseeing the delivery of medical services in DOC through Correct Care Solution's Central Region, including SCI-Mahanoy. Defendant Hochberg is sued in his individual and official capacities, and at all relevant times has acted and will continue to act under color of state law.

6. Defendant Christopher H. Hoppman is the Director of the Bureau of Health Care Service of the DOC. The Bureau of Health Care Services is responsible for supervising and monitoring the delivery of all medical and dental care services throughout the state correctional system, which must be provided at a level

consistent with community standards. He is also a
member of the Hepatitis C committee.  Defendant
Oppman is sued in his individual and official capacities.
At all relevant times, he has acted and will continue to
act under color of state law.

7. On information and belief, Defendant Paul Noel is the
Chief Medical Director of the DOC and has responsibility
in overseeing the delivery of medical services in the
DOC.  Defendant Noel is sued in his individual and
official capacities.  He has acted and will continue to act
under color of state law.

8. Defendant Joseph Silva  is the Director of Bureau of
Medical services and the Medical Director at SCI-
Mahanoy and is responsible for providing health care to
inmates there. He is a member of the Hepatitis C
committee. He is sued in his official and individual
capacities. At all relevant times, Defendant Silva has
acted and will continue to act under color of state law.

9. Defendant John Steinhart is the Bureau of Corrections Health Care Administrator at SCI Mahanoy. Defendant Steinhart is sued in his individual and official capacities. At all relevant times, he has acted and will continue to act under color of state law.

10. Defendant Cerillo was the Bureau of Corrections Health Care Administrator at SCI Mahanoy prior to Steinhart. . Defendant Cerillo is sued in his individual and official capacities. At all relevant times, he has acted and will continue to act under color of state law.

11. Defendant Dr. Lisiak is the medical director at SCI Mahanoy is responsible for supervising and monitoring the delivery of all medical and dental care services at SCI Mahanoy which must be provided at a level consistent with community standards. Defendant Lisiak is sued in his individual and official capacities. At all relevant times, he has acted and will continue to act under color of state law.

12. Defendant Brenda Houser is a registered nurse and the Infections Control Nurse at SCI Mahanoy. Defendant Houser is sued in her individual and official capacities. She has acted and will continue to act under color of state law.

13. Defendant Bushinski is a registered nurse and the Infections Control Nurse at SCI Mahanoy. Defendant Bushinski is sued in her individual and official capacities. She has acted and will continue to act under color of state law.

14. Defendant Shirley Laws-Smith is the Bureau of Corrections Health Care Administrator at SCI Mahanoy. Defendant Laws-Smith is sued in her individual and official capacities. At all relevant times, she has acted and will continue to act under color of state law.

15. Defendant Dr. Littles is the medical director at SCI Chester and is responsible for supervising and monitoring the delivery of all medical and dental care services at SCI Chester which must be provided at a level

consistent with community standards.  Defendant Littles

is sued in his individual and official capacities

---

**III. Facts of the Case**

15.   Hepatitis C is viral infection, primarily spread through contact with

infected blood that attacks the liver and causes hepatitis, or liver inflammation,

which can significantly impair the liver's ability to assist the body in digesting

essential nutrients, filter toxins from the blood, and prevent disease.

---

16. Hepatitis C infections are of multiple genotypes and can be of an acute

or chronic nature.  An acute infection, a short-term illness, occurs within

the first six (6) months of exposure to the virus and, for many people, it

leads to chronic Hepatitis C infection.

---

17.    Chronic Hepatitis C infections are serious, long-term illnesses that

can last throughout a person's life. Hepatitis C is the leading cause of cirrhosis

(irreversible scarring of liver tissue) and liver cancer and is the most common

cause of liver transplants. Chronic Hepatitis C infection can also cause serious

chronic liver disease, liver fibrosis (scarring of liver tissue), and death.

---

18.     Cirrhosis of the liver can cause symptoms such as swelling, increased likelihood of bruising, jaundice, itching, nausea, and problems with concentration and memory.

---

Hepatitis C infections occur upon transmission of blood from a person infected with Hepatitis C to another person. The major means of transmission

---

20. Hepatitis C infections occur upon transmission of blood form a person infected with Hepatitis C to another person. The major means of transmission are the sharing of equipment for injecting drugs; tattooing or piercing; through needle-stick injuries; being born to a mother with Hepatitis C; transfusion with infected blood or blood products; and by sexual contact with a person infected with Hepatitis C.

21. Each day without treatment increases the likelihood of cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease, and death from liver failure due to chronic Hepatitis C infection.

22. Liver transplants are painful, carry a risk of significant complications, and are nearly impossible for prisoners to obtain.  Transplants result in lower recovery rates than treatment with direct-acting antiviral drugs, and transplants are very costly.

---

25 .For many years, findings and establishing an effective and safe treatment for Hepatitis C infections was an elusive goal. The standard of care failed to cure large cure large numbers of patients and was associated with painful and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress.

26. Since 2011, the approval by the Federal Drug Administration (FDA) of new direct-acting antiviral drugs (DAAD) has greatly improved the treatment module for Hepatitis C infections.

27. In 2011, the FDA approved the use of protease inhibitors called boceprevir (under brand name Vicrtrelis) and telaprevir (under brand name Incivek), and the standard of care developed into a "triple therapy" to include the combination of either boceprevir or telaprevir, plus ribavirin and interferon. The triple therapy improved results for many patients, but continued to contain painful and adverse side effects.

28.    In 2013, the FDA approved DAAD medications called simeprevir (under brand name Olysio) and sofosbuvir (under brand names Sovaldi). At this time, the recommended treatment was DAAD such as Solvadi combined with

ribavirin, or with interferon, depending on the patient's other symptoms and medical diagnoses.

29.     In late 2014, the FDA approved the use of Sovaldi in combination with Olsyio for the treatment of Hepatitis C.

30.     On October 10, 2014, the FDA specifically approved Harvoni, a pill that is taken once a day and combines sofosbuvir and ledipasvir.

31.     Harvoni eliminates the need for the patient to take interferon and/or ribavirin, which were largely responsible for the adverse and difficult side-effects of treating Hepatitis C.

32.     Simeprevir, sofosbuvir, and Harvoni have few side effects, greater efficacy, can reduce treatment durations by 75 percent, and are administered orally rather than by injections.

33.     The new treatment modules utilizing these DAAD have very high cure rates (over 90% of patients treated for Solvaldi and over 95% for Harvoni), have fewer and far less serious side-effects than the previous treatment modules, and involve a far shorter treatment time (12-24 weeks)

34. The standard of care in the community for Hepatitis C infections—the use of DAAD—is now well-established.  The CDC has recommended these new treatment modules and the Federal Bureau of Prisons (BOP),

in 2014, adopted new Clinical Practice Guidelines in 2014 that incorporate these new DAAD treatment modules. Under the CDC and the BOP guidelines, the recommended treatment depends further upon the particularized genotype, the acute or chronic status of the disease, and prior attempts to treat the patient's Hepatitis C infection.

35. Prior to the settlement of the Chimenti v. Pa DOC case in 2019, Defendant Wetzel and others have not implemented treatment policies or provided medical treatment for Hepatitis C infections consistent with current medical and community standards and specifically have not authorized treatment with the effective direct-acting antiviral drugs.

36. On information and belief, Defendant Wetzel and others have ceased providing any treatment to inmates with Hepatitis C infections, including the combination therapy of interferon and ribavirin, or the triple therapy of boceprevir/telaprevir with interferon and ribavirin until 2019.

37. Contrary to the proper and necessary medical procedures and the community standard of care, Defendants have denied requests by Plaintiff Boyd for the appropriate and medically necessary direct-acting antiviral treatment for their Hepatitis C infections.

38. Individuals such as Plaintiff Boyd seeking medical treatment for their
Hepatitis C infections have merely been informed that the "DOC/BHCS is
revaluating [their] treatment protocol for Hepatitis C given the new
guidance issued by the American Association of Liver Diseases (AASLD)
and the Infectious Diseases Society of American (IDSA)."

39. As a consequence of this policy, Plaintiff has a substantially increased
risk of continued Hepatitis C infection, liver disease, liver cancer,
cirrhosis, and death.

40. From 2011 Plaintiff Boyd filed 18 Inmate Request to Staff Members at
SCI's Mahanoy and Chester, three Grievances and two letters to various
defendants seeking treatment for Hepatitis C and the new drug
treatment that was available and was told he didn't fit the criteria for
treatment. [See Boyd pro se complaint -paragraphs 5-39 (F)-
incorporated by reference]

41. As a result of the failure to treat Boyd until 2020, he suffered
irreparable harm and considerable damage to his liver, contracted cirrhosis
and fibrosis of the liver as well as considerable pain and suffering

42. All efforts to obtain the new drug treatment regime failed until 2019 when Boyd complained about a pain on his right side and demanded a liver function test which indicated he had F4 cirrhosis and he was included in terms of the settlement agreement in the Chimenti v. Pa. DOC, C.A. No. 15-CV-3333 [J. Padova] case.

43. Plaintiff Boyd was examined by Dr. Little on Jan. 27, 2021 who said his macro globin was up to 298 HI and 110-276 mg./dl because of cirrhosis and he had a lesion on his liver.

**IV. Cause of Action**

43. Plaintiff Boyd's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution were violated by all Defendants who were deliberately indifferent to his medical needs by  enforcing and continue to enforce the DOC's flawed Hepatitis C infection treatment policy. The enforcement of this policy constitutes a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis *C*.

44. Defendants policies and practices constitute negligence to Plaintiff Boyd's serious medical condition establishing medical malpractice under the laws of the Commonwealth of Pennsylvania

## V. Relief

44. Compensatory and punitive damages from all defendants

45 Reasonable Attorney's fees and costs

46. Such other relief the Court deems necessary and just

Respectfully Submitted,

___Angus Love__/s/

_____

Angus R. Love

Attorney ID No. 22392

Law Offices of Angus Love

P.O. Box 521

Narberth, Pa. 19072

_____

215-435-6345

*Attorney for Plaintiff*

_____

DATE:

_____

_____

_____